BURTON, APPELLEE, *v.* RESHETYLO, SUPT., LIMA STATE HOSPITAL, APPELLANT.

(No. 73-439—Decided April 17, 1974.)

*Mr. Robert L. Balyeat*, for appellee.
*Mr. William J. Brown*, attorney general, and *Mr. Thomas D. Rooney*, for appellant.

CELEBREZZE, J.

I.

Initially, appellee filed a motion to dismiss with this court, alleging that the issues are now moot because petitioner is no longer in custody of the Lima State Hospital.

This court has dismissed actions in habeas corpus on the sole ground that a petitioner-appellant, or a petitioner in an action originally filed here, was no longer in the custody of his named respondent. *McDonald* v. *Keiter, Sheriff* (1971), 25 Ohio St. 2d 281; *Smith* v. *Sacks* (1961), 172 Ohio St. 59. The court has also dismissed such appeals and actions when it appeared that the petitioner had been released from all custody arising out of the facts alleged.

*In re Popp* (1973), 35 Ohio St. 2d 142; *Kaiser* v. *Hall* (1970), 24 Ohio St. 2d 23; *Ware* v. *Haskins* (1963), 175 Ohio St. 207; *State, ex rel. Shaw,* v. *Switzer* (1952), 158 Ohio St. 329. However, in only one case has the court dismissed a cause in habeas corpus where the respondent was the appellant and the dismissal was based upon a lack of custody in the named respondent. *Sakacsi* v. *McGettrick* (1967), 9 Ohio St. 2d 156.

For whatever reason a petitioner may be out of a *respondent's* custody, a respondent's appeal of the *granting* of a writ of habeas corpus should not be dismissed solely as a result of that lack of custody. To so hold destroys appellate review of the granting of a writ, a circumstance which is undesirable. Hence, the rule implied by *Sakacsi* is disapproved, and the ground of mootness urged by the instant appellee is not well taken.

## II.

This court has often said that if the committing court has jurisdiction over the person and the subject matter of the action, habeas corpus relief will not be granted.[1] The Court of Appeals granted relief in this case after it determined that an indictment is necessary to confer jurisdiction on the Court of Common Pleas for purposes of commitment pursuant to R. C. 2945.37 and 2945.38.

R. C. 2945.37, in pertinent part, provides:

"If the attorney for a *person accused of crime whose cause is pending in the Court of Common Pleas,* before or after trial suggests to the court that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court, or if the grand jury represents to the court that any such person is not then sane or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person,

---

[1] This position is supported by precedent and in R. C. 2725.05. See *State* v. *Perry* (1967), 10 Ohio St. 2d 175; *Freeman* v. *Maxwell* (1965), 4 Ohio St. 2d 4. But see *Case* v. *Nebraska* (1965), 381 U. S. 336; *Freeman* v. *Maxwell, supra,* at page 6.

or in its discretion may empanel a jury for such purpose. * * *'' (Emphasis added.)

R. C. 2945.38 provides:

"If the court or jury finds, upon the hearing provided for in Section 2945.37 of the Revised Code, that the accused is sane, he shall be proceeded against as provided by law. If the court or jury finds him to be not sane, he shall be forthwith committed by the court to a hospital for the mentally ill within the jurisdiction of the court. If the court finds it advisable, it shall commit such person to the Lima State Hospital until he is restored to reason, and upon being restored to reason the accused shall be proceeded against as provided by law."

Both sides agree that the emphasized language is dispositive in this case. The person must be "accused" and his "cause" must be "pending in the Court of Common Pleas" in order for the court to exercise jurisdiction.

Appellee argues that the foregoing statutory language excludes pre-indictment commitment. He reaches this conclusion from a study of the development of the legislation.[2]

---

[2]The original "Act to Provide * * * Lunatic Asylums * * *" passed April 7, 1856 (53 Ohio Laws 81, 93, Sec. 53), in pertinent part, provided:

"If any person in prison shall, after the commission of an offense, and before conviction, become insane, whether he be in needy circumstances or not, and *whether indicted or not*, an examining court may be called in the manner provided * * * and if such court shall find that such person became insane after the commission of the crime or misdemeanor of which he *stands charged or indicted*, and is still insane; the said court shall proceed, and the prisoner shall for the time being, and until restored to reason, be dealt with in like manner as other lunatics are required to be after inquest had. * * *" (Emphasis added.)

The language of the act was amended March 31, 1874 (71 Ohio Laws 46, Sec. 53), and again March 23, 1875 (72 Ohio Laws 80, 81, Sec. 53), in areas not pertinent to this discussion.

It was then amended April 2, 1906 (98 Ohio Laws 236, 239, Sec. 12, 13), to provide:

"Persons Not Indicted Because of Insanity. When a grand jury upon investigation of a *person accused of crime* finds such person to be insane, said grand jury shall report such findings to the Court of Common Pleas, and the court shall proceed as provided in Sections 7240 and 7241 of the Revised Statutes of Ohio. If such person is then

The Court of Appeals determined that "* * *such separate and specific provision [relating to pre-indictment]

found to be insane he shall be committed to the Lima State Hospital until restored to reason.

"Disposition of Insane Under Indictment. If any person *under indictment* appears to be insane, proceeding shall be had as provided for persons *not indicted* because of insanity. In case such person is found to be insane, he shall be committed to the Lima State Hospital until restored to reason, when the superintendent thereof shall proceed as provided in Section 7243 of the Revised Statutes of Ohio." (Emphasis added.)

Prior to 1929, G. C. 13577 (98 Ohio Laws 236, 239; 1910 codification) provided:

"If a grand jury upon investigation of the person *accused of crime* finds such person to be insane it shall report such finding to the Court of Common Pleas * * * and such court and jury shall proceed in a like manner as provided by law when the question of the sanity of a *person indicted* for an offense is raised any time before sentence. * * *" (Emphasis added.)

G. C. 13608 (112 Ohio Laws 168) provided:

"That whenever upon arraignment or the calling for trial of a defendant *indicted* for a criminal offense, immunity from pleading to the indictment is claimed on behalf of the defendant on the ground that he is at the time insane, such claim of immunity shall be made in writing * * *. A jury shall be immediately empanelled as in other cases, and the trial as to the defendant's mental condition * * * shall be had * * *." (Emphasis added.)

Similarly, G. C. 13614 (98 Ohio Laws 236, 239; 1910 codification) provided:

"If a person under indictment appears to be insane, proceedings shall be had as provided for persons *not indicted* because of insanity. If such person is found to be insane, he shall be committed to Lima State Hospital until restored to reason when the superintendent thereof shall notify the prosecuting attorney of the proper county who shall proceed, as provided by law, with the trial of such person under indictment." (Emphasis added.)

Finally, G. C. 1985 (98 Ohio Laws 236), in pertinent part, provided:

"The Lima State Hospital shall be used for the custody, care and special treatment of insane persons of the following classes:

"* * *

"3. Persons *accused of crime*, but *not indicted* because of insanity.

"4. Persons *indicted* but found to be insane. * * *" (Emphasis added.)

disappeared from the law as a result of the revision and codification of criminal procedure enacted April 1, 1929. It also appears that * * * [in 1938] the Probate Court was the

---

When the revision and codification of criminal procedure took place in 1929, G. C. 13577, 13608, 13609, 13610 and 13614 were repealed. G. C. 13441-1 and 13441-2 (which are substantially identical to R. C. 2945.37 and 2945.38) were adopted.

G. C. 13441-1 provided:

"If the attorney for a *person accused of crime pending in the Court of Common Pleas*, whether before or after trial suggests to the court that such person is not then sane * * * or if the grand jury represents to the court that any such person is not then sane, or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose. * * *" (Emphasis added.)

G. C. 13441-2 provided:

"If the court or jury find upon the hearing * * * that the *accused* is sane, he shall be proceeded against as provided by law. If the court or jury find him to be not sane, he shall be forthwith committed by the court to an insane hospital within the jurisdiction of the court; provided, that if the court deem it advisable it shall commit such person to the Lima State Hospital until he be restored to reason, and upon being restored to reason the accused shall be proceeded against as provided by law." (Emphasis added.)

In 1938, G. C. 1985 was repealed and G. C. 1890-69 (117 Ohio Laws 550, 571), was enacted. G. C. 1890-69, in pertinent part, provided:

"The Lima State Hospital shall be used for the custody, care and special treatment of insane persons of the following classes:

"* * *

"4. Persons *charged with a felony* whose *cases are pending* in the Court of Common Pleas, either before, during or after trial but before sentence, and found to be insane. * * *" (Emphasis added.)

G. C. 1890-69 was amended in 1945 (121 Ohio Laws 423, 437), and then again in 1953 (125 Ohio Laws 823, 871, now R. C. 5125.01), and now, in pertinent part, provides:

"The Department of Mental Hygiene and Correction shall provide and designate a state hospital [Lima State Hospital has been designated] for the custody, care, and special treatment of persons of the following classes:

"* * *

"(D) Persons charged with a felony, whose *cases are pending* in the Court of Common Pleas, either before, during, or after trial but before sentence, and found to be insane * * *." (Emphasis added.)

only court given jurisdiction under defined circumstances to commit such person to the Lima State Hospital.'"

However, a careful reading of the statutes involved reveals that the portions which disappeared all dealt with the situation *after* indictment. The statutory interpretation suggested by the Court of Appeals would lead to the conclusion that R. C. 2945.37 and 2945.38 should no longer apply to a *post*-indictment situation; but such a conclusion cannot be correct, since one who is indicted must first be accused.

Appellant produces strong arguments for the contention that a person is "accused" within the meaning of R. C. 2945.37 even before he is bound over to the grand jury. The word "accused" is consistently used in R. C. Chapters 2931, 2933, 2935 and 2937,[4] all of which pertain to activities prior to indictment.

Appellant also argues that the General Assembly had other obvious choices of language. If, for instance, the General Assembly had used the words "subsequent to indictment," its intent would have been clear. Absent such a choice, appellant argues that we should accord to the word "accused" its ordinary and general meaning.

---

[3]In 1938, G. C. 1890-72 was enacted (117 Ohio Laws 572), providing:

"When in an inquest of insanity a judge of the Probate Court finds to be insane and vicious and dangerous a person theretofore convicted of a felony, *or when in an inquest of insanity the proof is evident and the presumption great that a person has committed an act or acts that constitute a felony in Ohio although not formally charged with crime, and such person is determined by the probate judge to be insane and vicious and dangerous,* the court may direct the commitment of such person to the Lima State Hospital where he shall be detained until he is recovered or his condition has improved to such an extent that his discharge will not be detrimental to the public welfare or injurious to him." (Emphasis added.)

However, in 1941 the above-emphasized portion of G. C. 1890-72 (now R. C. 5125.04) was deleted by amendment.

[4]The word "accused" is found in 229 sections of the Revised Code; "indicted" is found in 17 sections. Neither of those words is used in R. C. Chapters 5122, 5123 (however, "accused" is used once in R. C. 5123.31) and 5125.

We are persuaded that the enactment of G. C. 13441-1 (now R. C. 2945.37) was not only directed to the post-indictment situation, but was intended to encompass, within the terms of one clause, both situations formerly separated into two parts in the statute.

The other requirement of R. C. 2945.37 is that the cause must be "pending in the Court of Common Pleas."

In *Hartnett* v. *State* (1885), 42 Ohio St. 568, this court held:

"When a person is arrested and duly committed for a crime, for which he is thereafter indicted, the prosecution for that crime is pending * * * as soon as he is arrested and committed." This position was approved and followed in *State* v. *Morrow* (1914), 90 Ohio St. 202, 208, with the statement that: "The return of an indictment is but an incident in the progress of the prosecution. The prosecution is commenced in Common Pleas Court by filing the transcript from the magistrate's court."

Those cases, while not recent, withstand the test of time. Jurisdiction should be continuously held by a court once it is vested. A statement in *State* v. *Pealy* (1947), 49 Ohio Law Abs. 282, 285, seems pertinent: "It would be a terrible situation if an insane person accused of crime and confined in the county jail had to be held there until he was indicted or the grand jury suggested his insanity, before a hearing and commitment could be had."

### III.

Having decided that R. C. 2945.37 and 2945.38 were properly applied by the trial court, the ultimate question for resolution is whether petitioner was properly afforded habeas corpus relief. It is at this threshold that we wish to make clear what we are *not* deciding.

Appellee in this case spent almost 11 years in Lima State Hospital because he was (and is) not "of sufficient soundness of mind to understand and appreciate the nature of the charge against him, to comprehend his situation, and * * * [was not] mentally capable of furnishing his counsel the facts essential to the presentation of a proper

defense." *State, ex rel. Townsend,* v. *Bushong* (1946), 146 Ohio St. 271, 274. We are not here deciding any question concerning the classifications made in R. C. 5125.01, nor are we deciding any question concerning the quality of care received in an institution designated under that section.

The dispositive question here is the procedure necessary to protect the constitutional rights of a person committed pursuant to R. C. 2945.37 and 2945.38, prior to indictment.

Burton was, in effect, given an indeterminate "sentence" to Lima State Hospital solely because he was unable to stand trial. Indeterminate commitment, as here, which is based solely upon this inability to stand trial, will not withstand due process scrutiny. R. C. 5122.01(B) provides:

" 'Mentally ill individual subject to hospitalization by court order' means a mentally ill individual who, because of his illness, is likely to injure himself or others if allowed to remain at liberty, or is in need of care or treatment in a mental hospital, and because of his illness lacks sufficient insight or capacity to make responsible decisions with respect to his hospitalization."

Ohio has thus provided alternate standards for commitment: (a) The person is dangerous (to himself or others); or (b) the person is in need of care or treatment in a mental hospital.

Petitioner was committed because he was incapable of standing trial. Due process requires that the duration of this commitment must bear a reasonable relation to the purpose behind it. It is clear that the state's interest is in aiding petitioner through care and treatment to attain competency. When it is determined that there is little likelihood that he will ever attain that goal the state must either institute other proceedings or release him.

In *Jackson* v. *Indiana* (1972), 406 U. S. 715, 738, the Supreme Court held:

"* * * a person charged by a state with a criminal offense who is committed solely on account of his incapacity

44

to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the state must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. * * *."

Thus, in the instant case, petitioner, being indefinitely committed because of "incapacity to proceed to trial," was deprived of his due process rights, and should have been committed pursuant to one of the alternate standards provided for civil commitment in R. C. 5122.01.

Ohio, by providing procedures for the continued commitment of convicted persons under R. C. 5125.08 and 5125.-09, already subscribes to the principles of *Baxstrom* v. *Herold* (1966), 383 U. S. 107; 111, that: "* * * there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments."

Burton was accused of issuing checks with insufficient funds in violation of R. C. 2911.111. The maximum sentence provided for one convicted of that charge is seven years. Burton was held in the Lima State Hospital over ten years. Because of his status as an "accused" he was also deprived of important equal protection safeguards which are provided to persons actually convicted.

R. C. 5125.08 provides:

"If the insanity of an inmate, serving sentence, in the *hospital for the criminal insane and psychopathic,* continues upon the expiration of his sentence, within five days before the expiration of such sentence, the superintendent of the hospital shall make application to the probate judge of the county in which the institution is situated for an order to retain such person in the hospital until he is restored to reason. The superintendent shall mail a written notice that he made such application to one or more friends or relatives of the inmate, if their addresses are known." (Emphasis added.)

R. C. 5125.09 provides:

"Upon receipt of the application referred to in Section 5125.08 of the Revised Code, the probate judge shall notify such alleged insane person, and shall call two physicians not related by blood or marriage to such person or to the person applying for such certificate and not officially connected with the hospital and who have been in actual practice in medicine for at least three years, and the judge may also call other creditable witnesses. If the judge certifies that satisfactory proof of insanity of the person examined has been adduced, the judge shall direct the retention of the insane person in such hospital until he has recovered or his condition has improved to such an extent that his discharge will not be deterimental to the public welfare or injurious to such person. *The form of commitment shall be substantially that required for the commitment of inmates to other state hospitals.*

"In such examination, the probate judge may compel the attendance of witnesses, file certificates of physicians, taken under oath, and other papers, and enter the proper order in his journal. He shall report the result of the proceedings to the Department of Mental Health and Mental Retardation. Payment of the expenses shall be made from funds appropriated to the department." (Emphasis added.)

Even though the convicted person continues in a mental condition which requires continued retention in a mental hospital, he is entitled to the full panoply of rights accorded to a person in a civil commitment. (R. C. Chapter 5122.)

There is no corresponding procedure in our law which applies to the petitioner in this case. He is, in effect, given an indeterminate "sentence" to Lima State Hospital, subject only to the discretion of the superintendent of that hospital.

The United States Supreme Court, applying principles first enunciated in *Baxstrom* v. *Herold, supra* (383 U. S. 107), decided in *Jackson* v. *Indiana, supra* (406 U. S. 715), at 724, that:

"If criminal conviction and imposition of sentence are insufficient to justify less procedural and substantive protection against indefinite commitment than that generally available to all others, the mere filing of criminal charges surely cannot suffice."

We therefore hold that Burton was deprived of valuable equal protection and due process rights, and was properly granted relief by the Court of Appeals.

IV.

We have assumed that the original commitment in this case was proper. R. C. 2945.37 and 2945.38 provide sufficient procedural safeguards in the determination of whether a person is capable of standing trial. However, that commitment must by nature be limited to a reasonable time. If it is determined that a person committed pursuant to these sections is responding to treatment and care, and will, in the foreseeable future, probably be able to stand trial, that time might be extended somewhat. However, as soon as it is reliably determined that this is not the case, then other procedures must be instituted to either release the person or civilly commit him indefinitely, in the same way in which any other person may be committed.

Where an accused is bound over to the grand jury, early action by that body will avoid any possible problems concerning Section 10, Article I of the Ohio Constitution,⁵ and R. C. 2945.71 to 2945.73, inclusive,⁶ and will also determine the proper additional procedures.

---

⁵Section 10, Article I, provides:

"* * * no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury * * *."

See *Kurnava* v. *United States* (W. D. Mo. 1963), 222 F. Supp. 822.

⁶R. C. 2945.71, in pertinent part, provides:

"* * *

"(C) A person against whom a charge of felony is pending:

"(1) Shall be accorded a preliminary hearing within fifteen days after his arrest;

"(2) Shall be brought to trial within two hundred seventy days after his arrest.

If the grand jury returns a "no bill" the person is no longer "accused," and the Court of Common Pleas has the option of releasing the person or of turning the person over to the jurisdiction of the Probate Court pursuant to R. C. 5122.35, which, in pertinent part, provides:

"In a case in which the jurisdiction of a court has not been specifically given or the procedure provided for, the Probate Court shall have full, complete, and general jurisdiction to determine the actual mental status of any person alleged to be mentally ill, or mentally retarded, and found within such probate judge's county, and make disposition of such person in accordance with the procedure prescribed by Sections 5122.01 to 5122.38, inclusive, and 5125.01 to 5125.312, inclusive, of the Revised Code. * * *"

However, if the grand jury returns an indictment[7] the commitment is continued until a determination is made as to the likelihood of the person ever standing trial. When it is determined that the person probably will never at-

"(D) For purposes of computing time under divisions (A), (B), and (C) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. "* * *"

R. C. 2945.72, in pertinent part, provides.

"The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

"* * *

"(B) Any period during which the accused is mentally incompetent to stand trial, or is physically incapable of standing trial;

"* * *"

R. C. 2945.73, in pertinent part, provides:

"(A) A charge of felony shall be dismissed if the accused is not accorded a preliminary hearing within the time required by Sections 2945.71 and 2945.72 of the Revised Code. * * *"

Possible analogies could also be drawn to *State* v. *Gray* (1964), 1 Ohio St. 2d 21; *State* v. *Cross* (1971), 26 Ohio St. 2d 270.

See, also, Notes, Incompetency to Stand Trial, 81 Harvard L. Rev. 454.

[7] We are presuming that a person who lacks sufficient capacity to stand trial also lacks sufficient capacity to waive indictment and proceed by information. See *Frye* v. *Settle* (W. D. Mo. 1958), 168 F. Supp. 7,

tain the mental capacity necessary to stand trial, the Common Pleas Court should release the person into the custody of the Probate Court pursuant to R. C. 5122.35.

The Probate Court, in making "disposition of such person in accordance with the procedure prescribed by Sections 5122.01 to 5122.38, inclusive, and 5125.01 to 5125.312, inclusive," should notify the prosecutor of the county in which the person was indicted so that he may participate in the proceeding.[8]

The rights afforded a person in a civil commitment hearing are no more than the rights which we would afford any defendant in our criminal process.

For the foregoing reasons, the judgment of the Court of Appeals, allowing the writ of habeas corpus, is affirmed.

*Judgment affirmed.*

HERBERT, CORRIGAN, W. BROWN and P. BROWN, JJ., concur.

O'NEILL, C. J., and STERN, J., concur in the judgment only.

---

[8]The federal statutes, Sections 4244 *et seq.*, Title 18, U. S. Code, are similar to R. C. 2945.37 and 2945.38; cases cited after these sections in the U. S. Code Annotated are of interest in this area. The federal system has an additional problem since there is no permanent facility available for certain classes of persons.

For further insight into the federal system in relation to commitment prior to trial, see Institutes on Sentencing, 35 F. R. D. 381, 459, and 37 F. R. D. 111, 155.