THE STATE OF OHIO, APPELLEE, *v.* HUNT, APPELLANT.

[Cite as State v. Hunt (1976), 47 Ohio St. 2d 170.]

(No. 75-951—Decided July 21, 1976.)

*Mr. Richard G. Ward,* assistant prosecuting attorney, for appellee.

*Mr. Thomas L. Twyford* and *Mr. David Riebel,* for appellant.

HERBERT, J. The initial question before us is whether the trial court's order committing appellant to Lima State Hospital was a final order.

In formerly considering the appellate review of. a judgment rendered in a sanity or competency hearing under the predecessor of R. C. 2945.38,[1] this court determined that a verdict finding the accused sane was not appealable prior to a conviction. See *Inskeep* v. *State* (1880), 35 Ohio

---

[1]"If the court or jury finds, upon the hearing provided for in Section 2945.37 of the Revised Code, that the accused is sane, he shall be proceeded against as provided by law. If the court or jury finds him to be not sane, he shall be forthwith committed by the court to a hospital for the mentally ill or mentally retarded within the jurisdiction of the court. If the court finds it advisable, it shall commit such person to the Lima state hospital until he is restored to reason, and upon being restored to reason the accused shall be proceeded against as provided by law."

St. 482; *State* v. *Hagert* (1944), 144 Ohio St. 316, 58 N. E. 2d 764. However, because the consequences of a finding of insanity are significantly different from when the accused is found sane and capable of standing trial, our decisions in *Inskeep* and *Hagert* are not dispositive of the issue herein.

A split of authority exists in jurisdictions which have considered the question of whether the accused can appeal from a finding of insanity prior to trial. In decisions which have held that such orders are not appealable, the courts have emphasized that a finding of insanity or incompetency is merely preliminary and collateral to the main issue of the guilt or innocence of the accused, and to allow an appeal would only serve to delay a determination on the criminal charges.[2]

On the other hand, some states have determined that these findings are appealable by pointing to the fact that the accused's trial may be delayed indefinitely if he did not receive a speedy review of his condition and remained committed for a long period of time.[3]

Although there is merit in the rationale of those decisions which allow an appeal because of a possible long term commitment, those cases did not involve the situation, as in the case at bar, where the court set a limit on the duration of the commitment.

Additionally, R. C. 2945.381 provides safeguards for review of a commitment order by stating, in pertinent part:

"If an accused person is committed to a hospital under Section 2945.38 of the Revised Code, and thereafter it comes to the attention of the court by the filing of a certificate of a psychiatrist or a licensed clinical psychologist and physician on the staff of the hospital to which the accused was committed, that there is not a substantial proba-

---

[2]See *People* v. *Cornelius* (1947), 332 Ill. App. 271, 74 N. E. 2d 900; *Cogburn* v. *State* (1955), 198 Tenn. 431. 281 S. W. 2d 38; and *Crocker* v. *State* (1884), 60 Wis. 553, 19 N. W. 435.

[3]See *Higgins* v. *United States* (C. A. 9, 1953), 205 F. 2d 650; *People* v. *Fields* (1965), 62 Cal. 2d 538, 399 P. 2d 369; and *Commonwealth* v. *Ragone* (1935), 317 Pa. 113, 176 A. 154.

bility that the accused will in the foreseeable future possess the requisite mental competency to stand trial and that the accused is a mentally ill or mentally retarded person, the committing court upon receipt of such certificate shall within thirty days conduct a hearing to show cause why the accused should not be released from commitment under Section 2945.38 of the Revised Code, and be involuntarily committed pursuant to Sections 5122.11 to 5122.16 of the Revised Code if the accused is alleged to be mentally ill, or pursuant to Sections 5123.71 to 5123.76 of the Revised Code if the accused is alleged to be mentally retarded, through the Probate Division of the Common Pleas Court of the county in which the individual was accused.

"Not later than one year after an accused is committed, if no certificate is filed and the accused has not been returned for trial, the head of the hospital to which the accused is committed shall so notify the committing court in writing. Within thirty days of the receipt of such a notice, the committing court shall conduct the hearing required by this section to show cause why the accused should not be released from commitment under Section 2945.38 of the Revised Code, and be involuntarily committed pursuant to Sections 5122.11 to 5122.16 of the Revised Code if the accused is alleged to be mentally ill, or pursuant to Sections 5123.71 to 5123.76 of the Revised Code if the accused is alleged to be mentally retarded, through the Probate Division of the Common Pleas Court of the county in which the individual was accused."

As can be seen, R. C. 2945.381 mandates that the mental condition of the accused must be reviewed no later than one year after commitment. Also, R. C. 2945.381 implements the requirements set forth in *Burton* v. *Reshetylo* (1974), 38 Ohio St. 2d 35, 309 N. E. 2d 907, that an accused, committed pursuant to R. C. 2945.37 and 2945.38, can be held only for the period of time reasonably necessary to determine whether it is probable that he will attain the mental competency required to stand trial in the foreseeable future, and that he be given the full panoply of civil commitment

rights if it is unlikely he will ever attain such competency. By providing for review of the accused's mental condition in the above manner and, in effect, prohibiting indefinite commitments, R. C. 2945.381 effectively deals with those concerns which would support a need for judicial review of a finding of insanity or incompetency under R. C. 2945.38.

The scope of review in a criminal case is delineated by R. C. Chapter 2953 which provides for appeals from "judgments" or "final orders." See R. C. 2953.02, 2953.04 and 2953.05. Generally, the sentence in a criminal case is the judgment. *Miller* v. *Aderhold* (1933), 288 U. S. 206; *Berman* v. *United States* (1937), 302 U. S. 211; *State* v. *Chamberlain* (1964), 177 Ohio St. 104, 202 N. E. 2d 695; *Columbus* v. *Stires* (1967), 9 Ohio App. 2d 315, 224 N. E. 2d 369. In the case before us, there has been no imposition of sentence. See *State* v. *Chamberlain, supra.* Furthermore, it is our opinion that the findings of a competency hearing, which is preliminary and collateral to a determination of the defendant's guilt or innocence, is not a "final order" as defined in R. C. 2505.02.[4]

For the foregoing reasons, this court concludes that where the accused in a criminal case is found incompetent to stand trial and is committed to Lima State Hospital pursuant to R. C. 2945.38, such finding is not a final order.

Appellant contends further that the trial court abused its discretion by setting a two-year limit on the length of the commitment.

It can be observed from a reading of R. C. 2945.38, *supra,* fn. 1, that a court is not specifically empowered to place limits on the duration of a commitment. Nevertheless, the trial judge's actions in this cause must be viewed in light of decisions of this court and the United States Supreme Court which preceded his order.

[4]R. C. 2505.02 states, in part:

"An order affecting a substantial right in an action which in effect determines the action and prevents a judgment, an order affecting a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order vacating or setting aside a judgment and ordering a new trial is a final order which may be reviewed, affirmed, modified, or reversed, with or without retrial."

In *Jackson* v. *Indiana* (1972), 406 U. S. 715, the Supreme Court held that Indiana's indefinite commitment of a criminal defendant solely on his lack of capacity to stand trial violated the accused's due process rights, and that one could not be held more than the reasonable time necessary to determine if he will attain that competency in the foreseeable future. Because R. C. 2945.37 and 2945.38,[5] in effect, provided for the indefinite commitment of the accused, this court followed the *Jackson* holding in its syllabus in *Burton* v. *Reshetylo, supra* (38 Ohio St. 2d 35).

Faced with that precedent and the fact that R. C. 2945.38 was not then complemented by the review procedures within R. C. 2945.381, the trial judge, by limiting the commitment to two years, obviously attempted to square the mandates of *Jackson* and *Burton* with the indefinite commitment aspects of R. C. 2945.38. Thus, under those circumstances, the trial court did not abuse its discretion by imposing the two-year limit.[6]

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CORRIGAN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

STERN, J., dissenting. As the majority opinion states, appellant is a deaf mute, who is also functionally illiterate and capable of communicating by universal sign and finger language in only a rudimentary fashion. He was indicted for aggravated murder and thereafter committed for examination to determine his mental condition and competency to stand trial. What the majority fails to mention is the result of that examination. The report of Columbus State Hospital stated that:

"* * * [The accused] does not show any obvious

---

[5]R. C. 2945.381 did not become effective until August 29, 1975.

[6]This finding leaves unanswered the question of whether a trial court has the authority to set limits on the duration of a commitment under R. C. 2945.38.

existence of psychosis or other mental disorder which would benefit from psychiatric treatment, but he certainly would benefit from continuous education and training in a special school for the deaf.

"It was the opinion of the staff that his ability to fully comprehend the nature and the quality of charges against him are [*sic*] limited by his poor social and somewhat diminished intellectual capacities and mostly by his poor communication skills. Although he has made progress in learning sign language, to comprehend and respond to complex and abstract legal issues would be rather difficult for him.

"On the other hand, with the help of interpreters on a simpler level, he can communicate and could counsel in his own defense."

A psychologist who examined the accused reached similar conclusions,[7] and testified for the defense that "* * * he's not retarded in the sense that he is incapable of managing his own affairs of one thing or another like this * * *. I think that as far as the question about participation in his own defense, I think that my opinion would be that he does have the basic communication skills with the assistance of qualified interpreters that he would be able to understand basically what was going on and that he could participate in his defense, I'd think."

The defense requested that the case proceed to trial, whereas the prosecution requested a commitment of the accused to Lima State Hospital to improve his communication skills.

---

[7]His report stated:

"James 'Bobby' Hunt is a friendly young deaf man with extremely limited language and communication skills which probably are a result of:

"1) his deafness

"2) lack of appropriate educational opportunities and

"3) a generally deprived familial environment.

"His intelligence is classified in the upper educable retarded or lower dull range by tests which do not rely directly on verbal abilities. No evidence of psychotic behavior or thinking was observed. Bobby appears to be capable of learning and of developing his communication skills under proper instructional guidance."

Despite the fact that no evidence was presented to suggest that the accused was insane, the trial judge found that the accused was "not sane and unable to stand trial." The judge thereupon ordered the appellant committed to Lima State Hospital until "restored to reason or for a period of two years * * * whichever comes first." The court also specifically directed the authorities at Lima State Hospital to transfer the defendant to "an institution or school where his education can be continued and his communication skills enlarged * * *."

The dilemma in which the trial judge was placed is apparent. The accused is barely able to communicate at the most minimal level, and he would therefore be seriously handicapped in assisting at his own trial. Yet he is not insane, and the statutory provision for commitment of an accused, R. C. 2945.38, applies only to findings of insanity.

By the terms of this statute, the accused is to be proceeded against as provided by law if he is found to be sane, and is to be forthwith committed if he is found to be not sane. However, the statute provides no guidance for the disposition of this accused, who is sane, but whose competence to stand trial is in doubt because of his very limited ability to communicate. The trial judge, confronted with this dilemma, responded by finding the accused insane and ordered that the authorities at Lima State Hospital give the accused training to improve his ability to communicate.

The court apparently assumed that it had authority to commit a sane person who was not competent to stand trial.

The majority contends that this order is not a final appealable order, because the order is merely preliminary and collateral to the main issue of guilt and presumably that to allow an appeal would serve to delay a determination on the criminal charges. The difficulty with that position is obvious—the defendant is deprived of the substantial constitutional right to a speedy trial and is sentenced to involuntary commitment, and is denied the right of appeal provided to anyone who is civilly committed. Because

of the criminal indictment, he is subject to commitment for two years without appeal while he remains subject to trial, and also remains subject to any extension of the period of commitment ordered by the court. On the other hand, if an appeal were allowed, there is no likelihood of any delay in the criminal proceedings against him, because if he is found to be sane and competent on appeal, he will then be immediately subject to further proceedings leading to his trial, as his attorney requested.

Adopting the position of the majority, there is no remedy for this lengthy delay in trial, which is presumably intended to be for the accused's benefit but which the accused does not seek, except habeas corpus to test his involuntary commitment for up to two years, or longer should the trial court choose to extend it. The accused may well have a perfect defense, but he is nonetheless to be indefinitely prevented from asserting it, by being committed to the custody of the state. Such an order strikes me as very final indeed, and it seems that such an indefinite commitment of an accused as insane is a final appealable order, even though neither a finding of sanity nor a temporary commitment for observation would be appealable. See *State v. Thomas* (1964), 175 Ohio St. 563.

In examining the evidence before the trial court, it is clear that the accused was sane. There was no evidence whatsoever for a finding of insanity. Even if we assume however, that R. C. 2945.38 should apply to one who is simply incompetent to stand trial because of his difficulties in communicating, the decision of the trial judge is difficult to justify. All the expert evidence was to the effect that the accused was competent to stand trial, though with some difficulty. Had the defense requested a continuance in order to improve the accused's communication skills, I would find much more justification in the court's action, but here the trial judge disregarded the experts, and disregarded further the defense's own assertion of competence and request for an immediate trial. Nevertheless, the decision as to competency was clearly a difficult one, and the trial

judge had an independent responsibility to assure that the accused was accorded due process, so some latitude must be recognized. However, even assuming that the trial judge could have found, in his discretion, that the accused was not competent to stand trial, the order of the trial judge here is beyond his authority and is unconstitutional under *Jackson* v. *Indiana* (1972), 406 U. S. 715.

The majority's discussion of *Jackson* v. *Indiana, supra,* apparently concedes the need to review the decision of the trial judge. That case is almost indistinguishable from the present case, aside from the two-year limitation upon commitment and the possibility that this accused might improve his communication skills. Yet the majority disregards the fact that the decision of the trial judge does not conform to *Jackson.*

The court in *Jackson* states, at page 738:

"We hold, consequently, that a person charged by a state with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the state must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal. * * *" (Footnote omitted.)

Here, the trial court did not commit the accused to determine whether there was a substantial probability that the accused will attain the capacity to proceed to trial in the foreseeable future. He was simply committed as insane for up to two years until he regained his sanity, or more realistically, until he had been trained to communicate more effectively. This is exactly the sort of commitment struck down in *Jackson,* and two years is too long to be a reasonable time, particularly where it might be extended without

apparent limit. Whether in rendering his difficult decision the judge intended to square his mandate with *Jackson* is immaterial, for he failed to do so.

These questions, if they arose now, would be largely controlled by R. C. 2945.381, if we assume, as did the majority, the trial court and the *Jackson* court, *sub silentio,* that an accused with severe communications difficulties can be considered as "insane" if he is not competent to stand trial. R. C. 2945.381 follows closely the holding in *Jackson*. Nonetheless, this accused was judicially declared insane almost two years ago. That judgment was plainly in conflict with the evidence and with the holding in *Jackson* and cannot stand. I would reverse the judgment and remand the cause to the trial court for further proceedings to determine the present competency of the accused to stand trial. If the accused is still found to be incompetent, the trial court might proceed to order a temporary commitment, in conformance with *Jackson* and R. C. 2945.381, and determine whether there is a substantial possibility that the accused will in the foreseeable future possess the requisite mental competency to stand trial.