[This decision has been published in *Ohio Official Reports* at 90 Ohio St.3d 502.]

THE STATE OF OHIO, APPELLANT, *v*. SULLIVAN, APPELLEE.

[Cite as *State v. Sullivan*, 2001-Ohio-6.]

*Criminal procedure—R.C. 2945.38, as amended by Am.Sub.S.B. No. 285, is unconstitutional—Statutes—When court strikes down statute as unconstitutional, and offending statute replaced an existing law that had been repealed in same bill that enacted the offending statute, the repeal is also invalid unless it clearly appears that General Assembly meant the repeal to have effect even if the offending statute had never been passed.*

(No. 99-2099—Submitted September 26, 2000—Decided January 3, 2001.)

APPEAL from the Court of Appeals for Montgomery County, No. 17509.

———————————

SYLLABUS OF THE COURT

1. R.C. 2945.38, as amended by Am.Sub.S.B. No. 285, is unconstitutional.

2. When a court strikes down a statute as unconstitutional, and the offending statute replaced an existing law that had been repealed in the same bill that enacted the offending statute, the repeal is also invalid unless it clearly appears that the General Assembly meant the repeal to have effect even if the offending statute had never been passed. (*State ex rel. Pogue v. Groom* [1914], 91 Ohio St. 1, 109 N.E. 477, paragraph three of the syllabus, approved and followed.)

———————————

DOUGLAS, J.

{¶ 1} On May 13, 1997, the Montgomery County Grand Jury indicted defendant-appellee, Roger H. Sullivan, on one count of forcible rape in violation of R.C. 2907.02(A)(1)(b) and two counts of gross sexual imposition in violation of

R.C. 2907.05(A)(4). Each of these alleged crimes involved a child under the age of thirteen.

{¶ 2} On June 5, 1997, appellee entered pleas of not guilty and not guilty by reason of insanity. On that same day, appellee's court-appointed counsel moved the Court of Common Pleas of Montgomery County for an order to have appellee evaluated by a medical professional to determine whether appellee was competent to stand trial.

{¶ 3} On June 11, 1997, the trial court ordered, in accordance with R.C. 2945.371, that appellee undergo a mental examination at the Forensic Psychiatry Center for Western Ohio. Dr. Kim Stookey, a licensed clinical psychologist, performed the examination. Upon appellee's motion, the trial court, on October 21, 1997, ordered a second evaluation of appellee's mental condition. The second examination was performed by Dr. D. Susan Perry Dyer, also a licensed clinical psychologist.[1]

{¶ 4} After performing the examinations, both Dr. Stookey and Dr. Dyer testified at a June 19, 1998 hearing as to their conclusions regarding appellee's mental state. Both psychologists testified that appellee was mildly mentally retarded, that he was not competent to stand trial, and that no form of treatment would be effective in restoring appellee's competency to stand trial in the foreseeable future.

{¶ 5} Recent amendments to R.C. 2945.38 require that all defendants found incompetent to stand trial be ordered to undergo treatment for a set amount of time to attempt to restore their competency. In a motion to dismiss the indictment

---

1. R.C. 2945.371(G) requires that an examiner, after evaluating a defendant's mental condition, file a written report of his or her findings with the court. Although the record indicates that both psychologists prepared written reports and submitted them to the court in this case, neither report was *filed* in the Montgomery County Court of Common Pleas. Consequently, these reports are not a part of the record in this case. Therefore, our statements relating to the psychologists' conclusions regarding appellee's mental state are drawn entirely from the psychologists' testimony at a June 19, 1998 hearing before the trial court.

against him, appellee urged the court to find that this statute was an unconstitutional violation of a defendant's right to due process of law[2] because it required that incompetent defendants be ordered to undergo treatment for a mandatory period of time without considering whether they could actually be restored to competency. In support of his motion, appellee relied primarily on *Jackson v. Indiana* (1972), 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435, which held that an incompetent defendant may not be held for more than a reasonable amount of time to determine if competency can be restored.

{¶ 6} The trial court found that the mandatory treatment period required by R.C. 2945.38 was reasonable "in length and purpose, to determine the possibility of [appellee] attaining the competency to stand trial within the foreseeable future, as prescribed by the Supreme Court [in *Jackson*]." For that reason, the trial court held that R.C. 2945.38 did not violate appellee's constitutional right to due process and denied appellee's motion to dismiss the indictment. The court found appellee incompetent to stand trial and ordered appellee committed to Twin Valley Psychiatric Hospital.

{¶ 7} Upon appeal, the Second District Court of Appeals reversed the trial court's decision. The court held that committing appellee for a mandatory period, as required by R.C. 2945.38, "despite uncontroverted evidence that there was no probability he would be restored to competency in the foreseeable future," constituted a violation of appellee's due process rights.

{¶ 8} This cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶ 9} We are asked to review, in this case, the court of appeals' ruling that R.C. 2945.38, as amended by Am.Sub.S.B. No. 285 ("S.B. 285"), violates an

---

2. Appellee made additional arguments regarding the constitutionality of R.C. 2945.38, as amended by Am. Sub.S.B. No. 285. We do not discuss these arguments, as they are not pertinent to our opinion.

incompetent defendant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. For the reasons that follow, we affirm the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

R.C. 2945.38 prior to S.B. 285

{¶ 10} Prior to July 1, 1997, the effective date of S.B. 285, R.C. 2945.38(B) provided that if a court determined that a defendant was incompetent to stand trial, the court was required to make an additional finding as to whether there was a substantial probability that, with treatment, the defendant would become competent to stand trial within one year. If the court found that there was not a substantial probability that the defendant would become competent to stand trial within one year, the court could not impose treatment on the defendant. Rather, the court was required to dismiss the indictment against such a defendant, but, at its discretion, could cause an affidavit to be filed in the probate court alleging that the defendant was a mentally ill or mentally retarded person subject to institutionalization by court order. Former R.C. 2945.38(C) and (G), 146 Ohio Laws, Part VI, 10976-10979. Subsequent commitment proceedings in the probate court would be civil in nature and governed by R.C. Chapter 5122 or 5123. Former R.C. 2945.38(C), 146 Ohio Laws, Part VI, 10976-10977.

{¶ 11} If, on the other hand, the court determined that there was a substantial probability that, with treatment, the incompetent defendant would become competent to stand trial within one year, the court was required to order the defendant to undergo treatment. Former R.C. 2945.38(D), 146 Ohio Laws, Part VI, 10977. If during the defendant's treatment the person supervising the treatment came to the conclusion that there was not a substantial probability that the defendant would become competent to stand trial, that person was required to file a written report with the court advising of this conclusion. Former R.C. 2945.38(E)(3), 146

Ohio Laws, Part VI, 10978. Within ten days of receiving such a report, the court was required to hold a hearing on the issue of the defendant's competency to stand trial. Former R.C. 2945.38(F), 146 Ohio Laws, Part VI, 10978. If at that hearing the court determined that there was not a substantial probability that the defendant would become competent to stand trial within the time prescribed for treatment, the court was required to dismiss the indictment against the defendant. Former R.C. 2945.38(F) and (G), 146 Ohio Laws, Part VI, 10978-10979. Again, the court, at its discretion, could cause an affidavit to be filed in the probate court to commence civil commitment proceedings against the individual. Former R.C. 2945.38(F), *id*.

Effects of S.B. 285 on R.C. 2945.38

{¶ 12} In 1996, the General Assembly enacted S.B. 285, which contained amendments to R.C. 2945.38. 146 Ohio Laws, Part VI, 11192-11199. These amendments were effective July 1, 1997. See Section 4 of S.B. 285, *id.* at 11259. The S.B. 285 amendments to R.C. 2945.38 removed the requirement that a court, before ordering treatment, find that there was a substantial probability that the incompetent defendant could attain competency within one year. In addition, S.B. 285 removed the requirement that the person supervising an incompetent defendant's treatment advise the court if he or she determined that there was not a substantial probability that the defendant would attain competency to stand trial in the foreseeable future. The result of these changes is that R.C. 2945.38, as amended by S.B. 285, requires that all defendants found incompetent to stand trial undergo treatment for a mandatory period of time. The length of the mandatory treatment period is determined by the crime with which the defendant is charged, with the most serious crimes requiring one year of treatment. R.C. 2945.38(C), *id*. at 11193-11194. The treatment can be interrupted only if, during treatment, the trial court determines that the defendant has become competent to stand trial. R.C. 2945.38(H)(1), *id*. at 11196-11197.

Constitutionality of R.C. 2945.38, as Amended by S.B. 285

**{¶ 13}** The court of appeals held that R.C. 2945.38, as amended by S.B. 285, violates an incompetent defendant's due process rights and is, therefore, unconstitutional.  For the reasons that follow, we agree.

**{¶ 14}** In *Jackson v. Indiana* (1972), 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435, the United States Supreme Court struck down as unconstitutional an Indiana statute that permitted the indefinite commitment of defendants found incompetent to stand trial.  In that case, the court stated:

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.

"We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451.

**{¶ 15}** This court applied the *Jackson* holding in *Burton v. Reshetylo* (1974), 38 Ohio St.2d 35, 67 O.O.2d 53, 309 N.E.2d 907.  In that case, we stated:

"Due process requires that the duration of [commitment due to incompetence to stand trial] must bear a reasonable relation to the purpose behind it.  It is clear that the state's interest is in aiding petitioner through care and treatment to attain competency.  When it is determined that there is little likelihood that he will ever attain that goal the state must either institute other proceedings or release him." *Id.* at 43, 67 O.O.2d at 57, 309 N.E.2d at 912.

**{¶ 16}** Appellant, the state of Ohio, argues that R.C. 2945.38 does not violate a defendant's due process rights because, unlike the statutes at issue in *Jackson* and *Burton,* the current version of R.C. 2945.38 does not permit indefinite commitment.  Appellant contends that, because R.C. 2945.38, as amended, permits appellee to be committed for "only one year," the length of the commitment is

reasonable and satisfies the requirements of due process noted in *Jackson* and *Burton*.

{¶ 17} We agree that one year is a reasonable amount of time to hold an incompetent defendant *in order to restore him or her to competency to stand trial*. However, if it is determined prior to or during treatment that the defendant cannot be restored to competency, continued commitment of the defendant bears no relation to the purpose for which he or she is being held. *Jackson,* 406 U.S. at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451; *Burton*, 38 Ohio St.2d at 43, 67 O.O.2d at 57, 309 N.E.2d at 912. Thus, by amending R.C. 2945.38 in such a way that it no longer permits a court to take into consideration a defendant's ability to attain competency, the General Assembly has removed the assurance that the nature and duration of a defendant's commitment bears a relation to the purpose behind it. Moreover, requiring treatment of incompetent defendants for any mandatory period clearly violates our directive in *Burton* that "*as soon as* it is reliably determined that [the defendant will not, in the foreseeable future, attain the mental competence to stand trial], then other procedures must be instituted to either release the person or civilly commit him indefinitely." (Emphasis added.) *Burton*, 38 Ohio St.2d at 46, 67 O.O.2d at 59, 309 N.E.2d at 914.

{¶ 18} Appellant argues that the duration of the mandatory treatment set forth in the amended statute is rationally related to the purpose for treatment because the treatment time increases with the seriousness of the crime with which the defendant is charged. This argument is not well taken. The purpose of the treatment is to assist the defendant in attaining competency to stand trial. The seriousness of the crime charged has nothing to do with the amount of time it will take for the defendant to regain competency.

{¶ 19} Appellant further contends that R.C. 2945.38, as amended, satisfies the requirements of due process by providing procedures designed to protect an incompetent defendant's rights. For an example, appellant points out that pursuant

to subsection (F)(3) of the statute, "the supervisor of any mandatory treatment is required to file with the court a written report on the defendant's progress." Contrary to appellant's assertion, this procedure is not designed to protect the defendant's rights. The purpose of this procedure is to determine whether the defendant has become competent in order for the state to proceed with trial. There is no provision in the amended statute for discontinuing treatment if the person supervising the defendant's treatment reports that the treatment is not effective and that the defendant would not attain competency to stand trial in the foreseeable future. In fact, under the amended statute, such a conclusion by the person supervising treatment would not even trigger the need to file a written report with the court. R.C. 2945.38(F).

{¶ 20} Appellant and *amicus curiae*, the Attorney General of Ohio, argue that due process does not require that, prior to treatment, a court determine that there is a substantial probability that the defendant can be restored to competency. We agree. What due process does require, however, and what is lacking in R.C. 2945.38, is an assurance that the nature and duration of treatment are related to its purpose of restoring the defendant's competency to stand trial. *Jackson,* 406 U.S. at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451; *Burton*, 38 Ohio St.2d at 43, 67 O.O.2d at 57, 309 N.E.2d at 912. S.B. 285 eliminated that assurance by removing all provisions allowing for treatment to be discontinued upon the court's finding that the defendant could not be restored to competency in the foreseeable future.

{¶ 21} The Attorney General additionally contends that a federal statute similar to R.C. 2945.38 has been upheld in federal court. The Attorney General refers to Section 4241(d), Title 18, U.S.Code, which provides:

"If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his

defense, the court shall commit the defendant to the custody of the Attorney General.  The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

"(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed."

{¶ 22} The weakness of the Attorney General's argument lies in its failure to recognize a significant difference between R.C. 2945.38 and Section 4241, Title 18, U.S.Code.  While the federal statute does require a court to order treatment of those defendants found incompetent to stand trial, the treatment is only for such time as is necessary to determine whether there is a substantial probability that in the foreseeable future defendant will attain competency to stand trial.  Thus, unlike R.C. 2945.38, the federal statute does not set a mandatory minimum length of time during which the defendant must be treated regardless of whether the defendant can show that he or she will not, in the foreseeable future, attain competency to stand trial.

{¶ 23} In light of the foregoing, we find that R.C. 2945.38, as amended, clearly falls short of those procedural safeguards necessary to protect a defendant's right to due process.  Accordingly, we hold that R.C. 2945.38, as amended by S.B. 285, is unconstitutional.

Conclusion

{¶ 24} Having found the current version of R.C. 2945.38 unconstitutional, we must now determine the applicable law in this matter.  In *State ex rel. Pogue v. Groom* (1914), 91 Ohio St. 1, 109 N.E. 477, paragraph three of the syllabus, we held that "[w]here an act of the general assembly, purporting to provide a substitute for an existing law and in terms repealing the existing law, is declared to be unconstitutional and void, the repealing clause must also be held invalid, unless it clearly appear[s] that the general assembly would have passed the repealing clause

regardless of whether it had provided a valid substitute for the act repealed." It does not appear that the General Assembly would have repealed former R.C. 2945.38 without providing a substitute statute. It follows that the version of R.C. 2945.38 in effect prior to S.B. 285 is controlling and must be applied in this case. See, also, *Wendell v. AmeriTrust Co., N.A.* (1994), 69 Ohio St.3d 74, 77, 630 N.E.2d 368, 371 (the doctrine set forth in *Peerless Elec. Co. v. Bowers* [1955], 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468, *i.e.*, that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law, applies with similar force when the court's decision strikes down a statute as unconstitutional). Accordingly, when a court strikes down a statute as unconstitutional, and the offending statute replaced an existing law that had been repealed in the same bill that enacted the offending statute, the repeal is also invalid unless it clearly appears that the General Assembly meant the repeal to have effect even if the offending statute had never been passed.

{¶ 25} As previously noted, the version of R.C. 2945.38 in effect prior to the effective date of S.B. 285 provided that if a court found that a defendant was incompetent to stand trial, it was required to also make a finding as to whether there was a substantial probability that the defendant, if provided with treatment, would become competent to stand trial within one year. 146 Ohio Laws, Part VI, 10976. Because appellee's ability to attain competency was not relevant under R.C. 2945.38, as amended by S.B. 285, the trial court did not make a finding on this issue.[3] Therefore, we remand this cause to the trial court for a finding as to whether there is a substantial probability that with treatment appellee will attain competency

---

3. We agree with appellant's contention that the court of appeals erred in making a determination regarding appellee's ability to attain competency to stand trial.

to stand trial within one year.[4]  At its discretion, the trial court may hold a hearing to make this determination or it may make the determination without a hearing based on the record and any supplemental evidence submitted by either party.

{¶ 26} Accordingly, we affirm the judgment of the court of appeals and remand this cause to the Montgomery County Court of Common Pleas for further consideration consistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

---

4.  We acknowledge that if the trial court finds that there is not a substantial probability that appellee will attain competency to stand trial within one year of treatment, then the court must dismiss the indictment against appellee.  However, as indicated in former R.C. 2945.38(C), the trial court may cause an affidavit to be filed in the probate court alleging that appellee is a mentally ill person subject to hospitalization by court order or a mentally retarded person subject to institutionalization by court order, as defined in sections R.C. 5122.01 and 5123.01, respectively.  146 Ohio Laws, Part VI, 10976-10977.  Apparently, such an affidavit was filed after the court of appeals issued its decision, because the probate court responded with an entry dismissing the civil commitment case against appellee.  The court reasoned that "a pre-screening report has indicated that [appellee] is not mentally ill, and the record indicating that [appellee] is mildly mentally retarded and not subject to hospitalization."  Although the probate court's holding is not squarely before us, it has a significant impact on those defendants who are found incompetent to stand trial and unable to attain competency and, therefore, we feel compelled to comment on it.

R.C. 5123.01(L) provides that a " '[m]entally retarded person subject to institutionalization by court order' means a person * * * who is *at least moderately* mentally retarded."  (Emphasis added.)  All parties in this case agree that appellee is *mildly* mentally retarded.  Therefore, it is clear that appellee is not "at least moderately mentally retarded" and, thus, he is not a "mentally retarded person subject to institutionalization by court order."

However, whether appellee is a "*mentally ill* person subject to hospitalization by court order" is not so clear.  R.C. 5122.01(A) defines "mental illness" as "a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life."  The psychologists testified at a June 19, 1998 hearing in this case that appellee was not mentally ill.  However, when questioned by appellant regarding those factors in R.C. 5122.01(A) defining mental illness, the answers of both psychologists indicated that appellee's mental condition met the statutory definition of "mental illness."  It is not our role to make a finding in this regard pertaining to appellee.  We only wish to make clear that a person's mental condition may meet the statutory definition of "mental illness" provided in R.C. 5122.01(A), regardless of whether his or her condition meets the clinical definition of mental illness.

**COOK, J., dissenting.**

{¶ 27} The majority strikes amended R.C. 2945.38 *in toto*, deciding that Am.Sub.S.B. No. 285's modifications removed two essential procedural mechanisms from the former scheme: (1) the requirement that a trial court determine the defendant's restorability prior to commitment for restorative treatment, and (2) the requirement that, during treatment, a committed defendant's supervisor advise the court of a nonrestorability determination in order to commence other proceedings. The majority concludes that both of these procedural safeguards are required by the United States Supreme Court's decision in *Jackson v. Indiana* (1972), 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435, and this court's subsequent decision in *Burton v. Reshetylo* (1974), 38 Ohio St.2d 35, 67 O.O.2d 53, 309 N.E.2d 907. For the following reasons, I respectfully dissent.

A. "Front-End" Restorability Determinations

{¶ 28} I disagree with the majority's conclusion that amended R.C. 2945.38(B), which permits a trial court to commit incompetent defendants for treatment absent a pre-commitment restorability determination, is at odds with *Jackson*, *Burton,* or the Due Process Clauses that those cases have applied.

{¶ 29} For one, both *Jackson* and *Burton* addressed *indefinite* commitments of incompetent defendants—factual scenarios far different from the one we face here. In *Jackson*, the trial court ordered the incompetent defendant committed until the Indiana Department of Mental Health certified to the court that the defendant became sane, and the defendant had been so confined for three and a half years by the time the United States Supreme Court decided his case. In *Burton*, the trial court ordered the incompetent defendant committed to Lima State Hospital "until restored to reason," and the defendant had spent eleven years in "indeterminate commitment" by the time his case reached this court. *Burton,* 38 Ohio St.2d at 43, 67 O.O.2d at 57, 309 N.E.2d at 912. Neither *Jackson* nor *Burton,* then, squarely

12

addressed the constitutionality of a statutorily limited period of restorative commitment such as the one the trial court imposed in the case at bar.

{¶ 30} In fact, there is language in both *Jackson* and *Burton* that supports the Attorney General's position, as *amicus curiae* for the state, that "due process does not require that restorability be determined prior to an initial commitment for treatment for the purpose of restoring the defendant to competency." In *Jackson*, Justice Blackmun expressly noted that had the defendant's commitment been only temporary, "this might well be a different case." *Jackson,* 406 U.S. at 725, 92 S.Ct. at 1851, 32 L.Ed.2d at 443. The *Jackson* court held only that "a person     * * * committed solely on account of his incapacity to proceed to trial *cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future*." (Emphasis added.) *Id.* at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451. This language, reproduced nearly verbatim in our *Burton* syllabus, contemplates exactly what amended R.C. 2945.38(B) provides: that before any restorability determination is made, incompetent defendants may be committed for a reasonable period of time in order to determine whether restoration to competency is even possible. *Burton,* 38 Ohio St.2d 35, 67 O.O.2d 53, 309 N.E.2d 907, paragraph two of the syllabus.

{¶ 31} At least two federal circuits interpreting *Jackson* have agreed that due process does not require "front-end" restorability determinations. "Once the district court decides that a defendant is incompetent to stand trial, it is appropriate that he be hospitalized for a careful determination of the likelihood of regaining mental capacity to stand trial. The due process requirements of *Jackson* are met because the statute itself requires that the period of commitment be 'reasonable' for that purpose." *United States v. Donofrio* (C.A.11, 1990), 896 F.2d 1301, 1303; see, also, *United States v. Shawar* (C.A.7, 1989), 865 F.2d 856, 864 (concluding that mandatory commitment under federal statute upon a finding of incompetency is "consistent both with the statutory language, and with due process").

SUPREME COURT OF OHIO

**{¶ 32}** Because the current version of R.C. 2945.38(B) does not violate due process, I respectfully dissent from the majority's decision to declare amended R.C. 2945.38 unconstitutional *in toto*. See R.C. 1.50 ("If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable"). Accordingly, I must also dissent from the majority's disposition remanding this cause to the trial court for a "front-end" restorability determination. In my view, Sullivan's initial commitment for a reasonable period of restorative treatment could constitutionally occur under amended R.C. 2945.38(B) absent a "front-end" determination of restorability.

B. Discontinuing Treatment upon a Determination of Nonrestorability

**{¶ 33}** As another basis for declaring amended R.C. 2945.38 unconstitutional *in toto*, the majority notes that "[t]here is no provision in the amended statute for discontinuing treatment if the person supervising the defendant's treatment reports that the treatment is not effective and that defendant would not attain competency to stand trial in the foreseeable future."

**{¶ 34}** The majority's reading of amended R.C. 2945.38(C) through (H) is correct in that, unlike the former scheme, these provisions impose no requirement that an incompetent defendant's supervisor report a determination of nonrestorability. And *as applied to certain defendants* (defendants for whom a determination of nonrestorability is made after a reasonable period of treatment, but prior to the expiration of the statutory treatment period), I agree that these provisions of the amended statute *could* violate those defendants' due process rights. *Jackson* requires, after all, that the duration of commitment bear some reasonable relationship to the purpose for which the individual is committed. *Jackson,* 406 U.S. at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451. If the purpose of commitment under R.C. 2945.38 is restoration to competency, any relationship

between continued commitment and that purpose is arguably lacking once the defendant's supervisor determines, *after a reasonable period of treatment in which to consider the question*, that no possibility for restoration exists.

{¶ 35} Though I may share several of the majority's misgivings about some of S.B. 285's modifications, a decision on the constitutionality of *all* of amended R.C. 2945.38's provisions is premature at this time. The court of appeals relied on statutorily irrelevant "front-end" evidence of nonrestorability to reverse the trial court's commitment order. The appellate court never examined the constitutionality of the amended statute's commitment periods or reporting procedures—either facially *or* as applied to Sullivan. The majority's holding declares several provisions of amended R.C. 2945.38 to be constitutionally deficient without Sullivan having ever been subjected to them. "The general and abstract question, whether an act of the legislature be unconstitutional, can not with propriety be presented to a court." *Foster v. Wood Cty. Commrs.* (1859), 9 Ohio St. 540, 543. This court should refrain from rendering opinions on potential or hypothetical controversies. *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371, 372.

{¶ 36} For the foregoing reasons, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Cheryl A. Ross*, Assistant Prosecuting Attorney, for appellant.

*Anthony Comunale*, for appellee.

*Betty D. Montgomery*, Attorney General, *Sharon A. Jennings* and *Darrell M. Pierre, Jr.*, Assistant Attorneys General, urging reversal for *amicus curiae*, Attorney General of Ohio.

_____