JOURNAL ENTRY AND OPINION
Richard McClay appeals from a judgment of the Common Pleas Court determining that he suffered from a mental illness, necessitating institutionalization at Northcoast Behavioral Center. Mr. McClay complains on appeal the court erred because he is not mentally ill; he suffers from mild mental retardation and should not be institutionalized. After a review of the record, we reverse the decision of the trial court.
The record reveals that on April 2, 1998, a grand jury indicted Mr. McClay in case number CR-361546 for two counts of felonious assault in violation of R.C. 2903.11. Both counts contained prior conviction, repeat violent offender and firearm specifications. A grand jury indicted Mr. McClay in case number CR-364382 for two counts of trafficking cocaine in violation of R.C. 2925.03, two counts of possession of cocaine in violation of R.C. 2925.11 and one count of possession of criminal tools in violation of R.C. 2923.24. These subsequent charges are not the subject of this appeal.
Thereafter, on June 1, 1998, the trial court ordered Mr. McClay to Northcoast for a restoration to competency. Mr. McClay stayed at this facility for the one-year maximum but remained incompetent to stand trial. The court then ordered his return to the county jail for disposition of the case.
On January 19, 2000, the court conducted a hearing, and Detective Darryl Johnson of the Cleveland Police Department testified that on April 1, 1998, Mr. McClay sold crack cocaine on two occasions to police informants. On the same day, Detective Johnson obtained a search warrant and found crack cocaine and $819 on Mr. Johnson. Next, Detective Artara Adams of the Cleveland Police Department testified she investigated a felonious assault Mr. McClay committed when he shot his roommate, Jerry Burchette, in the face on January 15, 1998. Further, she spoke with Pamela Rivers, a person that Mr. McClay held at gun point.
The court also heard from Dr. Robert Schweid, a psychologist for the Common Pleas Court Psychiatric Clinic, who first evaluated Mr. McClay in 1983 in connection with a charge of involuntary manslaughter with a gun specification. He stated Mr. McClay suffered from mild mental retardation. After hearing the testimony, the court determined Mr. McClay was liable and responsible for the criminal acts charged and found him to be incompetent to stand trial and unrestorable to competency. In a separate journal entry, the court ordered the Clinic to examine Mr. McClay and to determine his eligibility for civil commitment.
On June 13, 2000, the court heard testimony regarding Mr. McClay's mental status. Dr. Schweid testified that Mr. McClay is not mentally ill as defined in R.C. 5122.01 or mentally retarded for the purpose of R.C.5123.01(L). However, he testified the combination of Mr. McClay's mild retardation and his profound speech impediment does not make him a candidate for a developmental center. He opined Mr. McClay would best be suited for a psychiatric hospital. Thereafter, Dr. Michael Aronoff, the Associate Director of the Common Pleas Court Psychiatric Clinic, testified:
 A. * * * Mr. McClay does not have the capacity to understand the nature and consequences of the charges against him, and he is unable to adequately assist his attorney in his defense, due to his mental defects of mild mental retardation and pseudobulbar palsy.
* * *
 A. * * * [I]t was my opinion that he did not fulfill the criteria for civil commitment due to mental illness and did not fulfill the criteria for commitment in a mental retardation developmental disability facility, institutionalization.
On June 30, 2000, the court ordered Mr. McClay into treatment at Northcoast. Thereafter, on July 14, 2000, the court journalized an entry finding Mr. McClay to be mentally ill and subject to hospitalization. Mr. McClay appeals from this decision and raises one assignment of error for our review. It states:
 I. THE TRIAL COURT ERRED IN FINDING APPELLANT A MENTALLY ILL PERSON SUBJECT TO HOSPITALIZATION.
Mr. McClay argues the court lacked clear and convincing evidence to determine Mr. McClay's mild mental retardation rendered him mentally ill or retarded and subject to court-ordered commitment. The State maintains the record supports the court's determination.
However, we are guided by State v. Sullivan (2001), 90 Ohio St.3d 502, where the Ohio Supreme Court declared in its syllabus:
 1. R.C. 2945.38, as amended by Am.Sub.S.B. No. 285, is unconstitutional.
 2. When a court strikes down a statute as unconstitutional, and the offending statute replaced an existing law that had been repealed in the same bill that enacted the offending statute, the repeal is also invalid unless it clearly appears that the General Assembly meant the repeal to have effect even if the offending statute had never been passed. (Citations omitted.)
In Sullivan, the Court further stated:
 Prior to July 1, 1997, the effective date of S.B. 285, R.C. 2945.38(B) provided that * * * [i]f the court found that there was not a substantial probability that the defendant would become competent to stand trial within one year, the court could not impose treatment on the defendant. Rather, the court was required to dismiss the indictment against such a defendant, but, at its discretion, could cause an affidavit to be filed in the probate court alleging that the defendant was a mentally ill or mentally retarded person subject to institutionalization by court order.
* * *
 In 1996, the General Assembly enacted S.B. 285 * * *. The S.B. 285 amendments to R.C. 2945.38 removed the requirement that a court, before ordering treatment, find that there was a substantial probability that the incompetent defendant could attain competency within one year.
* * *
 We agree that one year is a reasonable amount of time to hold an incompetent defendant in order to restore him or her to competency to stand trial. However, if it is determined prior to or during treatment that the defendant cannot be restored to competency, continued commitment of the defendant bears no relation to the purpose for which he or she is being held.
* * *
 * * * What due process does require, however, and what is lacking in R.C. 2945.38, is an assurance that the nature and duration of treatment are related to its purpose of restoring the defendant's competency to stand trial. * * *. S.B. 285 eliminated that assurance by removing all provisions allowing for treatment to be discontinued upon the court's finding that the defendant could not be restored to competency in the foreseeable future. (Citations omitted.)
In the instant case, the court determined at the conclusion of its January 19, 2000 hearing that Mr. McClay remained incompetent to stand trial and unrestorable to competency. At that point, continued commitment bears no relationship to why he is being held and violates his right to due process. Further, as stated in the syllabus of Sullivan, R.C.2945.38, prior to July 1, 1997, is effective and requires the court to either dismiss the charges against Mr. McClay or file an affidavit with Probate Court alleging that he is mentally ill or retarded and subject to institutionalization.
Accordingly, Mr. McClay's assignment of error is well taken, and the judgement of the trial court is reversed and remanded for proceedings consistent with this opinion.
It is ordered that appellant recover of appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, JUDGE:
DIANE KARPINSKI, A.J., and KENNETH A. ROCCO, J., CONCUR.