[Cite as *State v. Swanigan*, 2025-Ohio-4648.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240598 |
| | | TRIAL NO. B-2202844 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| LONDELL SWANIGAN, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 10/8/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Swanigan*, 2025-Ohio-4648.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,

    Plaintiff-Appellee,

    vs.

LONDELL SWANIGAN,

    Defendant-Appellant.

:

:

:

:

:

:

APPEAL NO. C-240598
TRIAL NO. B-2202844


*O P I N I O N*


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: October 8, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Lora Peters*, Assistant Public Defender, and *Brooklynn Pace*, Legal Intern, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1} Ohio law provides that a criminal defendant found lacking the requisite competency to stand trial shall not "be required to undergo treatment" to restore them to competency "for longer than" a period of time prescribed by R.C. 2945.38(C). In this case, we are asked to determine whether this statutory time limit represents the maximum cumulative time a defendant may be held for restoration during the same criminal proceeding, or whether the clock restarts each time a defendant has an intervening period of competency.

{¶2} For the reasons explained below, we take the former view and hold that the maximum treatment period in R.C. 2945.38(C) sets a cap on the cumulative time for which a defendant may be detained for competency-restoration treatment during a single proceeding. Because the trial court held otherwise in ordering defendant-appellee Londell Swanigan to undergo six months of further competency-restoration treatment, we reverse its order and remand the cause for further proceedings consistent with the law and this opinion.

## I. BACKGROUND

{¶3} Swanigan was indicted for robbery (a third-degree felony) in 2022, found incompetent to stand trial, and ordered to undergo competency-restoration treatment not to exceed six months. After more than five months (171 days) of treatment, Swanigan was restored to competency, pled guilty, and received a sentence of three years of community control.

{¶4} In August 2024, the State alleged that Swanigan had violated his community control. The trial court again had concerns about Swanigan's competency, and a court-appointed forensic examiner again concluded "that Mr. Swanigan is currently INCOMPETENT to stand trial." The examiner further opined that, because

Swanigan had previously received over five months of competency-restoration treatment, he could not be restored to competency in what remained of the six months allotted for treatment under R.C. 2945.38(C). However, in an addendum to that report, filed a month later, the examiner stated that if the court should "choose to reset the competency restoration time, . . . then it would be recommended that Mr. Swanigan be referred to Summit Behavioral Healthcare for competency restoration."

{¶5} At a hearing two days later, Swanigan argued that he had already undergone five months of treatment after being found incompetent the first time. Because he was not substantially likely to regain competency in the remaining month provided by R.C. 2945.38(C)(2), Swanigan argued, the case should be dismissed under R.C. 2945.38(H)(4).

{¶6} The State responded that competence is a question of "present mental condition" and that the court should not "look back in time" to prior competency determinations. It argued that Swanigan's restoration was a "significant event that required the case to then proceed," relying on *State v. Henderson*, 2014-Ohio-2991 (5th Dist.). The State further asserted that, while this court has never weighed in on the matter, it was common practice in Hamilton County to treat the maximum period for competency-restoration treatment in R.C. 2945.38(C) as restarting after an interrupting period of competency.

{¶7} The trial court agreed with the State's interpretation of R.C. 2945.38 and ordered Swanigan to undergo up to six months of further treatment, which Swanigan timely appealed.

## II. ANALYSIS

{¶8} Swanigan raises one assignment of error: "The trial court erred when it ordered Mr. Swanigan to be committed to undergo an additional six months of

4

competency restoration as that would exceed the maximum commitment duration allowed under R.C. 2945.38(C)(2) when combined with the previous time for restoration."

### A. Competency & Restoration in Ohio

{¶9} Due process requires that a criminal defendant be competent to stand trial. *Indiana v. Edwards*, 554 U.S. 164, 170 (2008), citing *Dusky v. United States*, 362 U.S. 402 (1960), and *Drope v. Missouri*, 420 U.S. 162 (1975). A defendant is generally deemed competent to stand trial if he has (1) "'a rational as well as factual understanding of the proceedings against him'" and (2) "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" (Emphasis deleted.) *Edwards* at 170, quoting *Dusky* at 402; *accord* R.C. 2945.37(G) (codifying the *Dusky* standard). When a defendant is unable to satisfy either criterion, "due process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him." *Medina v. California*, 505 U.S. 437, 448 (1992).

{¶10} Like most other states, Ohio has empowered trial courts to order incompetent defendants detained for the purpose of restoring them to competency, *see* R.C. 2945.38(B), and, in some instances, to compel them to take medications for that purpose, *see* R.C. 2945.38(A) and (B)(1)(c).

{¶11} But detention for competency restoration must still conform to the requirements of due process. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). To detain a defendant for competency restoration, the State must determine that the defendant

has a "substantial probability" of being restored "in the foreseeable future." *See id.* The defendant's "continued commitment" must continuously be "justified by progress toward th[e] goal" of restored competency. *Id.* If the State cannot justify its detention in this manner, the Due Process Clause requires that the State either "institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." *Id.*; *see also Burton v. Reshetylo*, 38 Ohio St.2d 35, 46 (1974).

{¶12} Ohio's competency-restoration statutes have long sought to add clarity to these nebulous "reasonable relation" and "foreseeable future" requirements. Prior to July 1997, a defendant found incompetent to stand trial could be detained for restoration to competency if the court found "a substantial probability that the defendant will become competent to stand trial within one year if provided a course of treatment." *See* former R.C. 2945.38(D), Am.Sub.S.B. No. 269, 146 Ohio Laws, Part VI, 10752, 10977; *see also State v. Sullivan*, 2001-Ohio-6, ¶ 10. However, this pre-1997 version of the statute also provided an overall cap on the duration of detention, so that "[n]o defendant shall be required to undergo treatment under this division for longer than" 15 months or one-third of the sentence for the worst offense charged, whichever was shorter. *See* former R.C. 2945.38(D), 146 Ohio Laws, Part VI, at 10977-10978.

{¶13} The General Assembly sought to alter this regime in 1997 with Am.Sub.S.B. No. 285, 146 Ohio Laws, Part VI, 11168. The bill amended R.C. 2945.38 to require that *any defendant* found incompetent to stand trial be ordered to undergo competency-restoration treatment, without an antecedent determination of whether they were restorable. *See* former R.C. 2945.38(B), 146 Ohio Laws, Part VI, at 11192-11193; *Sullivan* at ¶ 12. The new statute also altered how long a defendant could "be required to undergo treatment": one year if the most serious crime charged is a violent

6

first- or second-degree felony, six months for any other felony, and 60 days for a misdemeanor. *See* former R.C. 2945.38(C), 146 Ohio Laws, Part VI, at 11193-11194; *see also Sullivan* at ¶ 12. If the maximum time for restoration had passed and the defendant remained incompetent, the trial court was obligated to dismiss the charges against the defendant without prejudice or assert continuing jurisdiction over them pursuant to R.C. 2945.39, if applicable. *See* former R.C. 2945.38(H)(2) and (3), 146 Ohio Laws, Part VI, at 11196-11197.

**{¶14}** The Ohio Supreme Court held this amended version of R.C. 2945.38 unconstitutional in *Sullivan*, because it made no allowance "for treatment to be discontinued upon the court's finding that the defendant could not be restored to competency in the foreseeable future," and so eliminated any "assurance that the nature and duration of treatment are related to its purpose of restoring the defendant's competency to stand trial." *Sullivan* at ¶ 20. In response to *Sullivan*, the General Assembly repealed the 1997 amendments to R.C. 2945.38 and passed a series of new amendments, which took effect in 2002. *See* Am.Sub.S.B. No. 122, Sections 2 and 3, 149 Ohio Laws, Part I, 1081, 1097. The text and structure of the relevant provisions in this 2002 version of the statute are substantially similar to those of current R.C. 2945.38.

**{¶15}** The current version of R.C. 2945.38 contains elements of both the pre-1997 version of the statute and the 1997 amendments. Like the pre-1997 version, it requires a court that finds a defendant to be incompetent to stand trial but capable of restoration within a year to "order the defendant to undergo treatment." R.C. 2945.38(B)(1)(a)(i). And like both prior versions, it sets forth a "maximum time for treatment," which varies based on the level of the defendant's most serious offense. *Compare* R.C. 2945.38(H) (referring to "the maximum time for treatment as specified

in division (C)"), *with* former R.C. 2945.38(H) (1997), 146 Ohio Laws, Part VI, at 11196-11198 (same), *and* former R.C. 2945.38(F) (1996), 146 Ohio Laws, Part VI, at 10978-10979 (referring to "the time limit specified for treatment under division (D)" and "the maximum time that orders may be in effect as originally established under division (D)").

{¶16} Under the current statute's "maximum time for treatment" provision, a defendant who, like Swanigan, has been charged with third-degree-felony robbery under R.C. 2911.02(A)(3) cannot "be required to undergo treatment, including any continuing evaluation and treatment . . . for longer than . . . [s]ix months." R.C. 2945.38(C)(2). Where a defendant like Swanigan remains incompetent after the "maximum time for treatment relative to that offense . . . has expired," or where the trial court finds that there is not a substantial probability the defendant can be timely be restored, R.C. 2945.38(H)(4) provides as follows:

> [I]f the court finds that there is not a substantial probability that the defendant will become competent to stand trial even if the defendant is provided with a course of treatment, or if the maximum time for treatment relative to that offense as specified in division (C) of this section has expired, the court shall dismiss the indictment, information, or complaint against the defendant. A dismissal under this division is not a bar to further prosecution based on the same conduct. The court shall discharge the defendant unless the court or prosecutor files an affidavit in probate court for civil commitment . . . .

### B. The Scope of this Appeal

{¶17} We begin by noting what is not at issue in this case: whether R.C. 2945.38 is applicable to community-control hearings. In their briefs to this court, the

parties appear to agree that R.C. 2945.38 applies to Swanigan's community-control-violation hearing precisely as it would to a second competency determination pretrial.[1] This framing tracks how the case was litigated below.

**{¶18}** The issue the parties have raised with this court is whether R.C. 2945.38(C)'s time limits, which trigger the procedures in R.C. 2945.38(H), reset after an intervening determination of competency. We therefore accept this case as the parties have briefed it and argued it below: on the assumption that R.C. 2945.38(C)'s maximum-treatment provision is interpreted the same whether applying pretrial or to a community-control-violation proceeding. We do not purport to resolve whether and to what extent R.C. 2945.38 applies in the community-control context. The only question properly before us, and the only question we consider, is whether an interrupting period of competency restarts R.C. 2945.38(C)'s clock.

## C. The Statute: R.C. 2945.38

**{¶19}** Questions of statutory interpretation are pure questions of law, which this court reviews de novo. *Wray v. Albi Holdings, P.L.L.*, 2021-Ohio-3920, ¶ 7 (1st Dist.). When interpreting a statute, our duty "is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted." *State v. Parker*, 2019-Ohio-3848, ¶ 21. If that language is "plain and unambiguous and conveys a clear and definite meaning," then we need only "apply the statute as written." *Id.*

### 1. Text & History

**{¶20}** We begin with the text. The plain language of R.C. 2945.38 imposes a

---

[1] During oral argument, the State briefly suggested that the community-control context made a difference. But an "issue that is raised for the first time during oral argument and not addressed in the appellate brief is waived." *See Janson v. Christ Hosp., Inc.*, 2021-Ohio-1467, ¶ 21 (1st Dist.); *accord State v. Roberts*, 2017-Ohio-2998, ¶ 85.

categorical limit on how long a single defendant can be "required to undergo treatment" for the purpose of competency restoration while being prosecuted on a single charge—not a cap on how long a defendant may be detained for restoration following each finding of incompetency. Three aspects of the statute's language and structure compel this conclusion, and a fourth consideration, drawn from the statute's amendment history, confirms it.

{¶21} *First,* the time limits in R.C. 2945.38 are categorical and measured in relation to the defendant. "*No defendant shall be required to undergo treatment . . . for longer than*" the prescribed period. (Emphasis added.) R.C. 2945.38(C). The plain language of this statute tells a defendant like Swanigan that he shall not "be required to undergo treatment" under R.C. 2945.38(B)(1) "for longer than . . . [s]ix months." Under ordinary English usage, that defendant would understand this provision to mean that, no matter how many R.C. 2945.38(B)(1) orders the trial court enters or how the treatment is broken up, his total time in treatment cannot exceed the six-month mark.

{¶22} The legislature chose this simple English construction. Had it wished to write the statute the State prefers, it easily could have. It might have said, "No defendant shall be required to undergo treatment . . . for longer than . . . six *consecutive* months." Or perhaps it could have said, "*Unless treatment is interrupted by a period of prolonged competency,* no defendant shall be required to undergo treatment . . . for longer than . . . six months." Or perhaps it could have added a proviso that "the maximum-treatment time limits in R.C. 2945.38(C) shall reset upon a judicial finding of competency." The General Assembly adopted none of these formulations. Instead, it unambiguously commanded that "[n]o defendant shall be required to undergo treatment" for longer than the time set forth in R.C. 2945.38(C). This court will not

create ambiguity where none exists.

**{¶23}** *Second*, R.C. 2945.38(H) clarifies that the maximum-treatment-time clock should be measured in relation to the defendant's offense or charge, *not* to each finding of incompetency or period of competency. The statute compels dismissal once "the maximum time for treatment *relative to that offense* . . . has expired." (Emphasis added.) R.C. 2945.38(H)(4). Had the General Assembly wished to measure its maximum-treatment periods based on treatment time *following the last finding of competency*, it might have said so here.

**{¶24}** *Third*, R.C. 2945.38 plainly contemplates that, in assessing whether the maximum treatment time has expired, courts will engage in cumulative timekeeping across multiple court orders. R.C. 2945.38(C) requires courts to "includ[e] any continuing evaluation and treatment" when calculating the length of time the defendant has been "required to undergo treatment." This language clearly indicates a cumulative intent—not an order-by-order cap.

**{¶25}** *Fourth*, the statute's amendment history, viewed in the light of common sense, confirms the cumulative reading of R.C. 2945.38(C) dictated by the text. As described above, the pre-1997 version of R.C. 2945.38(D) provided that "[n]o defendant shall be required to undergo treatment under this division for longer than the lesser of fifteen months or one-third of the longest prison term that might be imposed" for their most serious offense. Former R.C. 2945.38(D), 146 Ohio Laws, Part VI, at 10977. Former R.C. 2945.38(D) thus used the same "required to undergo" formulation familiar from current R.C. 2945.38(C), and the words in the latter version of the statute presumably inherited the meaning they had in the former. Thus, for us to conclude that R.C. 2945.38(C) resets the clock each time a defendant is restored to competency, we would have to believe that, prior to 1997, the statute authorized

*multiple periods* of forced restoration lasting up to *one-third of the defendant's sentence on the worst charge.* This reading is implausible on its face, because a "defendant's sentence shall be reduced by the total number of days the defendant is confined for [competency] examination . . . or treatment." *See* former R.C. 2945.38(I), 146 Ohio Laws, Part VI, at 10979. For certain defendants, this would mean two relapses into incompetency following an initial competency restoration could reduce their threatened sentence to time served. And three relapses would permit the State to detain such defendants pretrial for longer than it could imprison them upon conviction. Common sense therefore dictates that, prior to 1997, the "required to undergo" language referred to a cumulative total. The same words should be given the same meaning today.

{¶26} The General Assembly's statute is wordy, but clear: a defendant cannot "be required to undergo treatment" for restoration to competency—including "continuing evaluation and treatment"—for longer than the relevant period prescribed by R.C. 2945.38(C). That maximum-treatment period is measured against the total time the defendant has been committed for restoration treatment during a criminal proceeding. If a court determines that (1) there is not a "substantial probability" of the defendant "becom[ing] competent to stand trial" before the expiration of the "maximum time for treatment relative to [his] offense," and (2) the defendant is not subject to the court's continuing jurisdiction under R.C. 2945.39, then the court must dismiss the charges and, absent civil-commitment proceedings, "discharge the defendant." R.C. 2945.38(H)(4). The length of time a defendant is competent in between periods of court-ordered treatment is simply not a factor.

### 2. *Persuasive (and Not-So-Persuasive) Authorities*

{¶27} Our reading of the statute is consistent with that of our sister district in

*State v. Hudkins*, 2022-Ohio-249 (12th Dist.). Much like Swanigan, the defendant in *Hudkins* (1) could "be required to undergo treatment" for up to six months under R.C. 2945.38(C), (2) had received five months of treatment already, (3) had been restored to competency, (4) had again become incompetent, and (5) was ordered to undergo an additional six months of restoration treatment. *Id.* at ¶ 1-8.

**{¶28}** On appeal, the Twelfth District concluded that the order for six months of further restoration was unlawful, because the defendant's period of competency in between periods of incompetency did not restart the statutory maximum-treatment period. *Id.* at ¶ 28. The Twelfth District looked to the statutory language and context, concluding that "the legislature contemplated 'continuing evaluation and treatment' could occur after an initial incompetency finding and an order of treatment." *Id.* at ¶ 19, quoting R.C. 2945.38(C). It noted that the statute expressly precluded extending such continuing evaluation and treatment "beyond the 'maximum time for treatment as specified in division (C)' of the statute." *Id.*, citing R.C. 2945.38(G) and (H). And "[n]othing in the express language of R.C. 2945.38 indicates a legislative intent to 'restart' the restorative-treatment clock if there is a time period wherein the defendant became competent before once again becoming incompetent." *Id.* at ¶ 20.

**{¶29}** In its brief, however, the State asserts that "[s]imply put, the Twelfth District Court of Appeals was wrong in *Hudkins*," because *Hudkins* was inconsistent with the Fifth District's prior decision in *Henderson*, 2014-Ohio-2991 (5th Dist.). In *Henderson*, the defendant was found incompetent to stand trial but could not be required to undergo competency-restoration treatment for more than one year under R.C. 2945.38(C)(1). *Henderson* at ¶ 18. The trial court found that Henderson had been restored to competency after ten months of treatment, but, seven months later, found that Henderson had again become incompetent and ordered him to undergo further

competency restoration. *Id.* at ¶ 2-4. After four more months of treatment, Henderson moved to dismiss under R.C. 2945.38(C), and the State filed a motion for continuing jurisdiction under R.C. 2945.39. *Id.* at ¶ 6. The trial court held that the maximum-treatment period had expired several months earlier, but that the State could retain continuing jurisdiction. *Id.* at ¶ 7-10.[2]

{¶30} On appeal, the Fifth District concluded that the continuing jurisdiction motion was only proper if filed within the period prescribed by R.C. 2945.38(C). *See id.* at ¶ 19-20. However, the court held that the trial court's second finding of incompetency had begun "an entire new restoration period," so that "the deadline for final restoration or the invoking of the trial court's continuing jurisdiction" was fixed at one year after that second incompetency finding, which was many months *after* the State's continuing-jurisdiction motion. *Id.* at ¶ 20. During the seven months in between the periods of competency restoration, the Fifth District said, the "general course of the case was that appellant was competent." *Id.* The court provided no further explanation of what in R.C. 2945.38's text, structure, purpose, or history compelled its conclusion.

{¶31} We, like the *Hudkins* court, are "unpersuaded by the rationale expressed in *Henderson.*" *See Hudkins*, 2022-Ohio-249, at ¶ 26 (12th Dist.). *Henderson*'s reasoning on this point assumed the answer to the threshold question—whether the restoration period in R.C. 2945.38(C) *can* reset after an intervening period of competency—and proceeded to a subsidiary question—whether the clock *did* reset in Henderson's case. Thus, "the Fifth District failed to identify the statutory

---

[2] While Henderson was in competency-restoration treatment, the prosecution dismissed and refiled the charges against him. *Henderson*, 2014-Ohio-2991, at ¶ 5-6 (5th Dist.). The trial court considered this fact immaterial to the issue of the time limits imposed by R.C. 2945.38(C), and so considered the entire span of detention for restoration. *Id.* at ¶ 18. Neither party challenged that determination on appeal, and so the Fifth District did not consider it. *Id.*

14

authority for its holding" that "'an entire new restoration period commenced' following the trial court's second finding of incompetency after a period of competency." *Id.* at ¶ 26.

**{¶32}** The State seeks to flesh out *Henderson*'s ipse dixit, however, by arguing that (1) "competency to stand trial entails an assessment of 'present mental condition,'" (2) a finding of restored competency constitutes "a significant event" such that the defendant "'shall be proceeded against as provided by law,'" and (3) after a restoration to competency, new concerns about competency require the process of assessments and hearings to "begin[] again" under R.C. 2945.37(B).

**{¶33}** But these arguments, much like *Henderson* itself, fail to address the central question of R.C. 2945.38(C)'s meaning. *Of course* competency determinations concern a defendant's present mental condition, *of course* a competent defendant may be proceeded against according to law, and *of course* a new assessment and hearing process are necessary each time a previously-restored defendant's competency is called into question. But here we are dealing with a defendant who *has been found to be incompetent*. Both parties accept—as they must—that R.C. 2945.38(C) imposes a limit on the State's statutory authority to detain such a defendant for restoration to competency. The question is simply what sort of a limit the text imposes.

**{¶34}** The State, like the *Henderson* court, has offered no coherent argument—whether from text, context, history, or purpose—for why we should read R.C. 2945.38(C)'s time limits as resetting each time a defendant is restored to competency.

### 3. *Statutory Purpose & Constitutional Concerns*

**{¶35}** Further, our reading of R.C. 2945.38(C) and (H) better comports with the statute's purpose and constitutional backdrop. The Due Process Clause requires

that an individual's detention "bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738. Thus, the State may not continue to detain a defendant for restoration treatment, unless it finds a "substantial probability" the defendant will attain the competency required to be brought to trial in the "foreseeable future." *Id.* R.C. 2945.38(C) and (H) were clearly designed to give concrete parameters to this otherwise nebulous language.

{¶36} Under the State's interpretation, R.C. 2945.38(C) and (H) impose *no* upper bound on how many total months or even years the State may detain a defendant to restore him to competency before finally trying him. The State contends that the statute is only concerned with how long *any one round* of treatment may last.

{¶37} "Competency is, of course, fluid; it can ebb and flow over long periods in a cell. It is therefore entirely possible for a defendant . . . to be found competent to stand trial one day, and then cease to be so months, weeks, or even days later." *State v. Deloney*, 2025-Ohio-2458, ¶ 61 (1st Dist.). Under the State's reading of R.C. 2945.38(C), the cumulative time a defendant may be detained for restoration would likewise be "fluid" and might continue to rise as long as the defendant continues to decompensate—perhaps in perpetuity. Were there any ambiguity in the text of R.C. 2945.38(C) and (H) (there isn't), we would not be inclined to adopt a construction of R.C. 2945.38(C) that risked undermining the provision's limiting purpose and raised such due process concerns.

{¶38} We therefore hold that, in the course of a single proceeding, a defendant cannot "be required to undergo treatment" to restore them to competency for a cumulative period greater than that listed in R.C. 2945.38(C). That period does not "reset" because of an intervening period of competency within the same proceeding. If a defendant is found to be incompetent to stand trial and cannot be restored within

the time allotted, then the trial court must proceed according to R.C. 2945.38(B), 2945.38(H), or 2945.39, or another statutory provision applicable under the circumstances.

### D. This Case

**{¶39}** In this case, the parties appear to agree that Swanigan's maximum treatment time was fixed by R.C. 2945.38(C)(2) at six months. An expert assessment concluded that Swanigan could be timely restored, but only if that six-month time limit was reset. The trial court concluded that Swanigan's intervening period of competency had reset the statutory clock, and so ordered that he undergo up to six months of further restoration treatment.

**{¶40}** But, whatever the length of time Swanigan was previously detained to receive treatment, it was certainly greater than zero days. Thus, ordering Swanigan to be detained for restoration for an additional six months was error.

**{¶41}** The State urges that R.C. 2945.38(C)'s clock was nevertheless tolled during parts of Swanigan's initial treatment period because of Swanigan's refusal to take medications. *Compare State v. Barker*, 2007-Ohio-4612, ¶ 13 (2d Dist.) (applying equitable tolling to extend the maximum-restoration period of defendant whose "refusal of medication . . . consumed virtually all of the one-year period" prescribed in R.C. 2945.38(C)(1)(b)). Even assuming, without deciding, that such a refusal would toll R.C. 2945.38(C)'s time limit, the trial court did not hold as much in this case, and we lack the evidence necessary to affirm its order on that basis. Any tolling determination would require finding facts regarding Swanigan's historical compliance with medication recommendations—facts that the trial court did not find below and that the State does not provide evidence to justify. We decline to engage in such factfinding.

### III. Conclusion

{¶42} A defendant who falls under R.C. 2945.38(C)(2) can only "be required to undergo treatment" to restore him to competency for a cumulative period of six months. If the defendant has already received six months of treatment and remains incompetent, or if he cannot be restored within the relevant statutory window, then the trial court must dismiss the charges against him and either discharge or civilly commit him. *See* R.C. 2945.38(H)(4). Because the court below held otherwise in issuing its order of detention for competency-restoration treatment, we sustain Swanigan's sole assignment of error, reverse the trial court's judgment, and remand for proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**BOCK** and **MOORE, JJ.,** concur.